Good morning. May I please the Court. Bruce Sherman for Appellant Eric Poynter. This is a de novo review of the interpretation of student loan promissory notes to determine whether the notes first came due more than seven years before the student filed bankruptcy. There are two clauses that bear on this in the notes. One is a grace period commencement clause. The other is a default clause for reporting failures. I'm going to talk about the grace period commencement clause first. The dispute in the interpretation on that clause is with reference to the language cease to carry. It talks about how when it says if I leave school or cease to carry at least one half the normal academic workload, that is the point when the grace period is going to commence. There are two interpretations that have been put forth. One is that when the student ceases participating and no longer intends to complete the course, he ceases to carry the half the academic workload. The other is what the bankruptcy court said, ultimately said, that when the school agrees that the student may drop the class without receiving a failing grade, in other words, with the school's school-approved withdrawal, that's when the grace period commences. The first interpretation is the only reasonable and logical interpretation that conforms to the drafter's intent. The second can't stand up to even the mildest scrutiny. The reason for that is the second interpretation is, is a discharge avoidance interpretation. In other words, that interpretation would only be put into the note by the lender for the purpose of delaying the commencement of the grace period in order to argue years later in a circumstance where, like this one, where a student files bankruptcy close to the five or the seven-year period and to argue, well, it didn't actually start when he dropped his classes. And in Poynter's case, he continued to take one class. No, it only starts when the school recognizes that. But he continued to take one class, but he didn't withdraw from the others. He just decided himself he's gone. And don't we have to look to see something subjective? Suppose a person files for the full class, registers for everything, and then goes home and decides, I don't want to go to this university. I'm through. And he walks away. What evidence is there? In this case, you see what the problem is, don't you? The school has a system for withdrawing, and he didn't follow it. Well, Your Honor, I have two points to make on that. The first in the example that you gave where the student says, I'm going to sign up for classes, and now I'm not going to go to school anymore, but I'm not going to tell anybody. The second point is that the school has a system for withdrawing, and he didn't follow it. According to their interpretation, he could do that every year, and the grace period would never commence because he's never notified anybody that he's not going to school. That's not the way the system is supposed to work. In fact, he signs up for classes every year. He's telling people, I'm going to school. But then if he doesn't, the lender wants the grace period to commence immediately if he doesn't, and there are procedures set up to ensure that that happens even if he doesn't tell the school that he's doing it because, and this was in the Whitehead case that specifically said, and the bankruptcy court said it at the summary judgment here, you're supposed to track attendance. And in fact, there was an undisputed fact that said that San Diego State University tracks attendance for the purpose of determining if they're in class and that it needs to be reported to the financial aid office because they've got to start paying back their loans. If you went to school, didn't you have classmates that never went to class? I did. I had a short-term exam period. Somehow they'd pass. And that's why I look here. I mean, your client continued taking one class. He stopped going to others, and I accept as a given he had this objective intent not to pursue it. But I don't know if there's anything that would have prevented him from showing up for the exam and taking the exam and passing the class. There was nothing formal that prevented it, was there? Your Honor, the point is, and let me first say, that's not exactly the facts in this case. He went to the dean of students. But he didn't formally withdraw. Now, there is another separate argument with regard to whose fault that is. But my point is the fact that he doesn't show up in class doesn't tell me he's withdrawn from school or isn't carrying a load. I know plenty of people that didn't show up in class, and they still carried the load. Here's the point made by the bankruptcy court itself, and it's also in the Whitehead case. You're correct. But after, at the end of the semester, that transcript is going to show use, that he didn't finish those classes. And then if you look at the attendance sheet, you see he wasn't there since March 13th. So you can have the grace period start then. Why give more time to the student who doesn't report than the one that does? And why require that the school say yes? I mean, he reported it to the dean. And what the bankruptcy court is saying is, well, that wasn't good enough, because the school wouldn't accept it. They wouldn't give him a non-failing grade. That's not fair also. But I want to stick for a moment to the argument on the interpretation. Because one thing also, what if he leaves school? What if he -- If we can ask you a question. Yes, I'm sorry, Your Honor. I'm sorry, Your Honor. We can listen to you if you want us to. No, I apologize, Your Honor. He did tell the dean that he wanted to adjust what was -- but he didn't do anything else, did he? Other than stop attending classes. The bankruptcy court made a finding of fact that the dean -- he told him I can't get my professor to sign the form. And the bankruptcy court made a finding of fact that the dean said, I will take care of it. And so he did nothing else. And those are the findings of fact in the record. If a student leaves school, they never show up again. They decide on March 13th, I'm not coming back. There's no question the grace period begins on that day. Are you saying that the lender would find out at the end of the class? So at the end, when he doesn't take the final and the professor says, here's the date he stopped attending, then the lender would find out and should retroactively look back to the date he stopped attending. Is that your argument? Because somebody could stop attending, as Judge Clifton pointed out, then take the final later. Yes. And I agree. So it should be a retroactive after notice. Right. Because they're tracking this for that purpose. There's an undisputed fact in the case that says that. They're tracking attendance for this purpose. In the Whitehead case -- How is that meaningful? Because, okay, I learn in June that he stopped attending in March, so I could have sued him in March to collect, but I didn't learn that until June. So how does it become payable in March if I don't learn it until June? Your Honor, there's a grace period. So what happens is it's not until June, arguably. If they don't find out until June when they look at the transcript, they then calculate the grace period based on March. And if the student then says, well, I intended to take the final, and then at the last minute I had the flu, so I didn't take it, so you really can't start running the grace period until after I fail, what would the lender's response be at that point? You were not carrying half the normal academic workload because you didn't go to class, you didn't take the final, you weren't actively engaged in studies on a half-time basis, so the grace period commenced on March 13th, the day you stopped going to class. So even though he hadn't withdrawn and he intended to take the final, he would be counted as having withdrawn the first day of non-attendance. Do you think that would win for the lenders if they went in with that? Yes, I do, Your Honor. But one thing I want to point out is when we're talking about he hadn't withdrawn or he had withdrawn, it's that the school hadn't agreed that he could withdraw and not get a failing grade because there's a procedure where he can do that and not get a failing grade. Well, what if he's beyond the deadline, which he was, and they don't want to give him the special circumstance that says you don't get a failing grade? Does that mean if he reports to the school and his lender, and this was an example in the brief, let's say he tells his lender, you know what? I'm done. I'm just taking this one class, but I'm not doing anything more. And then the lender says, okay, your grace period is starting right now. And then the lender sues after six months or seven months because he hasn't started making his payments. Can he then argue and say, well, wait a minute, I got U's, not F's, and so the grace period didn't start until the end of the term? Of course he can't. This means when you stop pursuing your studies, that is, when you no longer qualify for the loan. Your example appears to depend on something that isn't true here. That is, he goes to the lender and says, I'm out. That didn't happen here. And so take that fact out, and I'm not sure your example is as persuasive as you want it to be. Well, my point is an interpretation point, that it means what I'm saying it means because the example that I'm giving, if that did occur, would mean that the lender would not be able to sue even though he received notice. That's really the point. I'm trying to argue interpretation. Your Honor, I'm going to save, unless there are more questions, the rest of my time. Actually, you're in deficit, but we'll give you a minute for rebuttal.  Thank you, Your Honor. Good morning, Your Honor. Beth Kluge on behalf of Education. What we have here is the determination of whether the word carry means enroll versus attend because the plaintiff has taken the whole time arguing whether attend is the operative trigger. But really, as you've pointed out in your questions, not that that's going to be your dispositive finding, but when attended or didn't attend is almost impossible for the lender to determine. The real question is, was he enrolled or was he not enrolled? What if the same events and the student had informed the lender, I've determined that I'm dropping out of classes now. Would that have started the grace period running, even if he had failed to go through the procedure mandated by the university? Yes, because I believe that the word enrolled can include a subjective component in the sense that if the plaintiff says I'm dropping out, then he is in school for less than one-half the academic workload. If his report card said otherwise, I believe that his statements could override what his transcript shows. But that isn't what happened here. We also have to remember that the language of the promissory note has to be construed in the context of the Higher Education Act. And under the Higher Education Act, in conjunction with Section 523A8, this is an exception to an exception, essentially. So that must be construed narrowly. And under the Higher Education Act, it is geared towards seeking reimbursement after having loaned money to get through school. And if you looked at the regulations to the Higher Education Act, the way they define half-time student uses the word enrolled. Under 34 CFR 668.2, a half-time student is defined as an enrolled student who is carrying a half-time academic workload, as determined by the institution. Same with full-time student. That is defined under the regulations as an enrolled student who is carrying a full-time academic workload. So the whole Higher Education Act depends and defines a student's status as enrolled versus attended. But if in my first hypothetical where the student notifies the lender and you said that would be enough, the student might still be enrolled for purposes of the university's records. But you said that would be enough. And so I'm wondering what other steps might be enough. So if the student informed all of his professors and the dean but for whatever reason didn't get the last signature card to make it official, would that be enough? Unless he was relying on someone who was going to carry through the withdrawal, which the bankruptcy court left open as a possibility, I think his operative statement, his stated belief to the lender, is enough to negate essentially the status of his transcript. But other than that, it has to take the steps required by the university. Is that what you're saying? Yes, ma'am, because it's based on enrollment. And until you officially withdraw from your classes, you are enrolled. And if you key this off of attendance as opposed to enrollment, if you look at Mr. Poynter's transcript itself, there's at least two semesters where if you construed an F or a U as a withdrawal I'm no longer attending, then Mr. Poynter would have dropped below a half-time academic workload. So we would have had a situation where what would have happened? The lender would start and stop the lending or the payment, repayment of the note? That doesn't make sense here. And no lender could be under that obligation. There's almost no way to know what the debtor is anticipating. Like I said, if you looked only at the transcript on two of these semesters, you could say that he had withdrawn. But in fact, his enrollment status did not change. And he didn't cease to be enrolled until you could argue he ceased to be enrolled as of the end of the spring semester. But from the lender's point of view, he signed up for classes in the fall of 1986. So we're confronted with a situation where we would have to, almost by osmosis, know that he had meant to withdraw in the spring, even though there was nothing on paper showing that, and even though he actually registered for classes in the fall of 1986. The note doesn't actually use the word enrolled. It does not. It says, after I either leave school or cease to carry at least one-half the normal academic workload. Yes. And the note's drafted by the lender. We understand, of course, that he continued to take the one-credit class. But take the facts of this case. In the beginning of March, he says, my life's going to hell in a handbasket. I'm out of here. And he physically leaves school. He may physically leave the state. He's just gone. Everything you say about enrolled would suggest that because he didn't take the formal steps to withdraw, grace period doesn't start to run. But if you read the note, it says, after I either leave school, and he certainly in my hypothetical factual scenario appears to leave school, wouldn't that suggest that in that situation the note would be triggered? He's left school? Education would argue that even under leaving school, you still have to notify the school. Why? Because you're stuck. If the note's to be interpreted, if it's ambiguous contrary to the drafter and certainly wasn't the student who was the drafter, why is it you read enrolled in that? First of all, I don't know that the ‑‑ I disagree that the promissory note should be interpreted against the lender because this is a situation in which the debtor is receiving a benefit. Well, the debtor's always receiving a benefit. When they borrow money, they get the money. True. But I don't think this is a situation under the Higher Education Act and in the situation in which we're in that you can fairly say that the usual rule of contract with regards to written contracts, not promissory notes, would apply here. Why not? Because this is a situation where the contract has to be construed in the context of the Higher Education Act and the Bankruptcy Act. So the statute itself would counter against this interpretation. But even if you were to construe the contract in the favor of the plaintiff, you can't ignore the language of the contract itself. And after the time I leave school, yes, if he just went away, went to the beach and started surfing and he wasn't taking any classes whatsoever, you could argue that he was no longer ‑‑ he triggered the language of the promissory note. But education submits that even under that definition, I, meaning I will repay, means I, the enrolled student. And yes, they could have used the word enroll in place of cease. I cease to carry at least one half the normal academic workload could be drafted to say, I cease to be enrolled. They didn't do that, but under the default language, they did use the word enrolled. And that shows that the entire paradigm of the promissory note was based on the understanding that the student continues to remain an enrolled student. If you have any other questions, I'll answer them, but otherwise I stand on my brief. Thank you. Thank you. Mr. Sherman, will you give me a minute? Thank you. I think that Civil Code Section 1654 does decide this case. I've cited cases in the brief that say that California law applies to these promissory notes. That statute is the one that says ambiguities are construed against the drafter. At a minimum, it's ambiguous. It doesn't say enrolled. I disagree. I don't have much time, but I disagree with her interpretation of enrolled in the default paragraph as well, because that default paragraph says if you don't report, you get less time to pay back the loan, not more time. That's what the default paragraph says. The Shisari case says that as well. Should it trouble me that there was a procedure for withdrawing which was not followed in this case? No, Your Honor, and here's the reason. Because he attempted to follow it, and the only thing that didn't happen was he attempted to follow it. What he did do was speak to one of the administrators. But how do we say that he attempted to follow it? He spoke to the dean of students whose job it was to assist students in this very area. And if he had filed more forms, the school still could have said, no, we're still going to give you U's, not W's. So you're going to get a failing grade. And so we would have been in the same place that we are now. And that's the whole problem with the interpretation, is that it depends on what the school does, whereas the clause says when I leave or cease to carry one half of the normal academic workload. I will submit on the briefs. Thank you. Thank you. Thank both counsel for your helpful arguments. The case just argued is submitted.
judges: Farris, Clifton, Ikuta